UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

MARC SEPANSKI,

                Plaintiff,

    v.                                           **DECISION AND ORDER**
                                                        10-CV-518S

JANIKING, INC., and JANIKING OF
BUFFALO, INC.

                Defendants.

## I. INTRODUCTION

In this action, Plaintiff Marc Sepanski asserts claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e) *et. seq.*, and the New York State Human Rights Law § 296 ("NYSHRL"). Plaintiff's claims arise from Defendants alleged discrimination on the basis of sex, sexual harassment, retaliatory acts, and termination of Plaintiff's employment. Plaintiff seeks a permanent injunction barring Defendants from future unlawful discriminatory acts, an award for lost wages and benefits, consequential and compensatory damages, punitive damages subject to Title VII, and reasonable attorneys' fees. Presently before this Court is Defendants' Motion to Dismiss or Alternatively to Transfer Venue.[1] For the following reasons, Defendants' motion is denied.

---

[1] In support of their motion, Defendants submit the Attorney Affirmation of Linda H. Joseph, Esq. with attached exhibit; the Affidavit of Jimmy Petrick; a Memorandum of Law; and a Reply Memorandum. (Docket Nos. 8, 13.) In opposition, Plaintiff filed a Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Alternatively to Transfer Venue. (Docket No. 12.)

## II.  BACKGROUND

**A.    Facts**

Plaintiff Marc Sepanski is a resident of the State of New York. (Complaint ("Comp"), Docket No. 1 at ¶ 5.)  Defendants Jani-King, International, Inc. and Jani-King of Buffalo (collectively, "Jani-King") are corporations incorporated under the laws of Texas, with their corporate headquarters in Addison, Dallas County, Texas. (Defendants' Memorandum of Law in Support of Their Motion to Dismiss or Alternatively to Transfer Venue, (Defs.' Mem.), Docket No. 8, 1.)

The present action arises out of Plaintiff's employment by Jani-King of Buffalo, a wholly owned subsidiary of Jani-King, International, Inc.  (Id.)  Sepanski began his employment on February 21, 2005.  (Comp. ¶ 7.)  As part of his employment, Sepanski entered into an "Employment and Non-Disclosure Agreement," summarizing the terms and conditions of his employment with Jani-King of Buffalo.  (Defs.' Mem. at 2.)  This agreement contained a forum selection and choice of law clause designating Dallas County as the exclusive venue for all employment-related disputes.  (Id.)

Shortly after Sepanski started his employment, he was subjected to a pattern of harassing and belittling comments on the basis of his gender. (Comp. ¶ 9.)  Among these comments were statements like "men are worthless" and "men were God's first mistake." (Id. at ¶ 11.)  In response, Plaintiff complained to Defendants' Regional Manager Joseph Stein.  (Id. at ¶ 12.)  These complaints eventually lead to Plaintiff's termination by Defendants on March 14, 2006.  (Id. at ¶¶ 8, 16.)

**B.    Procedural History**

Plaintiff commenced the present action on June 21, 2010, by filing a complaint in the United States District Court for the Western District of New York.  Defendants filed a motion to dismiss, or in the alternative, to transfer venue, on November 22, 2010. (Docket

No. 8.) Briefing on the motion concluded on January 20, 2011, at which time this Court took the matter under advisement without oral argument.

### III.  DISCUSSION

**A.      Motion to Dismiss Standard**

Federal Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss a complaint on the basis of "improper venue." Fed. R. Civ. P. 12(b)(3). The standard by which to decide a 12(b)(3) motion is similar to that of a 12(b)(2) motion to dismiss for lack of personal jurisdiction. Benjamin v. Carusona, No. 09 Civ. 9722, 2010 WL 4448213, at *5 (S.D.N.Y. Nov. 5, 2010). Accordingly, the court will accept as true all factual allegations in the non-moving party's pleadings and draw all reasonable inferences in favor of the party opposing the motion. Friedman v. Schwartz, No. 08-CV-2801, 2009 WL 701111, at *5 (E.D.N.Y. Mar. 13, 2009). Additionally, in ruling on the motion the court may rely on facts and documents outside the Complaint. Cartier v. Micha, Inc., No. 06-CV-4699, 2007 WL 1187188, at *2 (S.D.N.Y. Apr. 20, 2007). Plaintiff bears the burden of demonstrating that venue is proper. U.S.E.P.A. ex rel. McKeown v. Port Auth. of N.Y. & N.J., 162 F. Supp. 2d 173, 183 (S.D.N.Y. 2001). Absent an evidentiary hearing, the plaintiff need only make a *prima facie* showing that venue is proper. Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). . Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)).

**B.      Defendants' Motion to Dismiss**

Defendant contends that Plaintiff's claims should be dismissed based on improper venue because the forum selection clause in the Employment and Non-Disclosure Agreement requires Plaintiff to bring his action in Dallas County, Texas. Plaintiff does not dispute the validity of the forum selection clause, but argues that the clause should be held

unenforceable.

A party moving to dismiss an action for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure on the basis of a forum selection clause must demonstrate: "(1) the clause was reasonably communicated to the party resisting enforcement; (2) the clause was mandatory and not merely permissive; and (3) the claims and parties involved in the suit are subject to the forum selection clause." Altvater Gessler-J.A. Baczewski Intern. (USA) Inc. v. Sovieski, 572 F.3d 86, 89 (2d Cir. 2009).

Here, neither party disputes that these three requirements have been met. Therefore the burden shifts to the non-moving party to "rebut the presumption of enforceability." Id. To do so, a non-moving party must make a "sufficiently strong showing that 'enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overeaching.'" Id. (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15, 92 S. Ct. 1907, 32 L. Ed. 2d 513 (1972)).  This burden is met where a non-moving party demonstrates that (1) the forum selection clause is the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement would contravene a strong public policy of the forum state; or (4) trial in the selected forum would be so difficult and inconvenient that plaintiffs will effectively be deprived of their day in court. Phillips v. Audio Active Ltd., 494 F.3d 378, 392 (2d Cir. 2007).

Sepanski argues that both the third and fourth grounds in Phillips apply. As to the public policy exception, Plaintiff contends that Title VII's venue provision evidences a public policy favoring plaintiffs' right to bring civil rights actions in any of Title VII's specified forums, without regard to forum selection clauses.

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII's venue provision reads,

> [A Title VII] action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice . . . .

42 U.S.C. § 2000e-5(f)(3). Plaintiff relies heavily on the decisions in Thomas v. Rehabilitation Services of Columbus, Inc., 45 F. Supp. 2d 1375, 1379 (M.D. Ga. 1999), and the Second Circuit's decision in Red Bull Associates v. Best Western International, 862 F.2d 963 (2d Cir. 1988) ("Red Bull") for the proposition that Title VII's venue provision trumps Defendant's forum selection clause on public policy grounds.

At issue in Thomas was the proper forum in which to bring a Title VII claim. Defendant in that case asked the court to enforce a forum selection clause, and dismiss plaintiff's Title VII action. Thomas, 45 F. Supp. 2d at 1378-79. The court observed that "[b]y expressly providing that an action under Title VII may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, Congress sought to ensure that an aggrieved party could avail herself of a local, rather than distant, judicial forum, in part, so that she could minimize her costs in her effort to vindicate her civil rights." Id. at 1379 (internal quotation marks omitted). The court went on to hold the forum selection clause unenforceable in light of Title VII's express venue provision. Id. at 1381; see also Liles v. Ginn-La West End, Ltd., 631 F.3d 1242, 1253 (11th Cir. 2011) (taking "no issue with the result reached in Thomas").

Although the ruling in Thomas is not binding on this court, plaintiff also relies on the Second Circuit's decision in Red Bull. Red Bull held, in the context of a § 1404(a) motion

to transfer, that "[w]hile individuals are free to regulate their purely private disputes by means of contractual choice of forum, we cannot adopt a *per se* rule that gives these private arrangements dispositive effect where the civil rights laws are concerned." 862 F.2d at 967. However, "Red Bull and its progeny do not hold that 'forum selection clauses are never enforceable in civil rights actions; rather, Red Bull teaches that the district court, upon consideration of the alleged violations and the particular circumstances of the parties and the action, may in its discretion find cause to ignore the general rule of the enforceability of valid forum selection clauses." Woolf v. Mary Kay Inc., 176 F. Supp. 2d 642, 649 (quoting Weiss v. Columbia Pictures Television, Inc., 801 F. Supp. 1276, 1280 (S.D.N.Y. 1992)); see also Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352, 363 (S.D.N.Y. 2004) (enforcing forum selection clause and noting that plaintiffs had failed to identify a strong public policy endorsed by statute or judicial decision); P & J G Enters., Inc. v. Best Western Intern., Inc., 845 F. Supp. 84, 90 (N.D.N.Y. 1994) (forum selection clause valid where plaintiffs failed to allege violations of civil rights laws).

      This Court is cognizant of the fact that few courts have, to date, considered the enforceability of forum selection clauses in the context of Title VII. Smith v. Kyphon, Inc., 578 F. Supp. 2d 954, 961 (M.D. Tenn. 2008). Consequently, although Red Bull is distinguishable from the present case because it was premised on a motion to transfer pursuant to 28 U.S.C. § 1404(a), as opposed to a motion to dismiss pursuant to Rule 12(b)(3), this Court nevertheless finds the court's ruling in Red Bull the most applicable controlling precedent. See TradeComet.com LLC v. Good, Inc., 647 F.3d 472, 478 (2d Cir. 2011) (distinguishing Red Bull for not addressing denial of a motion to dismiss pursuant to Rule 12(b)(3), but emphasizing that court was not addressing circumstances where defendant moves in the alternative for both dismissal under Rule 12(b) and transfer under § 1404). For this reason while this Court looks to the decisions of other district courts,

including Thomas, as persuasive authority, it must concentrate its analysis on the Second Circuit's decision in Red Bull.[2]

Red Bull presented the issue of "whether a contractual forum selection clause should prevail when the district court found that enforcing the clause would hamper more important imperatives of the forum in which suit was brought." 862 F.2d at 964. The case reached the Court of Appeals after the district judge denied defendant's 28 U.S.C. § 1404(a) motion to transfer upon thorough consideration of "the forum selection clause, the convenience of the parties in light of their provision for an Arizona venue, the public policy implications of Red Bull's acting as a 'private attorney general' enforcing the Fair Housing laws, and the strength of the evidence of discrimination." Id. at 967 (internal quotation marks omitted). The Second Circuit affirmed the district judge's decision, holding that "we believe the decision to transfer a case where there is a contractual choice-of-forum provision and significant public policy concerns at issue is best left to the sound discretion of the trial judge." Id. at 964.

Although in the present case, Jani-King seeks a motion to dismiss, and, only in the alternative, seeks transfer, Red Bull's treatment of Title VII is nevertheless instructive. Plaintiff argues that enforcing the forum selection clause would contravene a strong public policy of the forum state. The district court in Red Bull, analyzed the public interest factors weighing in favor of transfer by applying the principle that a "choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought." Red Bull Assocs. v. Best Western Int'l, Inc., 686 F. Supp. 447,

---

[2]Courts outside this Circuit have divided on whether Title VII permits a plaintiff to bring a claim in a venue other than that specified in a forum selection clause. See Liles, 631 F.3d at 1242; Smith, 578 F. Supp. 2d at 954; Thomas, 45 F. Supp. 2d 1375; but see Chapman v. Dell, Inc., No. EP-09-CV-7-KC, 2009 WL 1024635, at *3 (W.D. Tex. Apr. 15, 2009). See generally Hunnicutt v. CHF Solutions, Inc., No. 10-CV-0042-CVE-FHM, 2010 WL 1078470, at *3 n.3 (N.D. Okla. Mar. 18, 2010) (noting split). Because this Court is guided by the decision in Red Bull, it will not engage in an extensive analysis of these other decisions.

451) (S.D.N.Y. 1988) (quoting M/S Bremen, 407 U.S. at 15). The district court found that in bringing a Title VII action, plaintiffs acted not only in their own interests but, "more importantly– as private attorneys general in vindication of the public interest." Id. at 451. The district court went on to find that the public's interest was not assuaged by transferring the action to another federal court because plaintiff was entitled to a trial by jury:

> It is precisely through the jury that the local population will have an opportunity to express its interest in promoting integrated housing arrangements in their own community. It is likely to be of far less immediate concern to jurors living in Phoenix, Arizona whether or not racial discrimination has deprived citizens of another state thousands of miles away of the benefits sought to be protected by the Civil Rights Acts. Congress has declared that the entire community has an interest in ensuring fair housing and equal access to public accommodations for its citizens, and the private attorney general is entitled to have the local residents play the part of fact-finder in determining whether or not defendant's actions were inimical to that goal.

Id. at 452.

The Second Circuit approved of the district court's reasoning, noting that the district judge "correctly followed a strong federal public policy favoring enforcement of the civil rights laws so important to the advancement of modern society and concluded that implementation of the forum selection clause would frustrate that purpose." Red Bull, 862 F.2d at 967. Similarly here, this Court finds that Plaintiff has sufficiently made out a *prima facie* case that venue in this district is proper. Title VII constituted a "clear statutory declaration that civil rights . . . were to be encouraged." Id. at 966. The discriminatory conduct Plaintiff was subjected to took place in Buffalo, New York. Those who witnessed and directly committed the acts, are similarly located in Buffalo, New York. As the district court in Red Bull observed, it is in the interest of the local community to participate in the enforcement of its civil rights laws.

Jani-King's contention that Red Bull is inapplicable are unavailing. Jani-King points out that Red Bull predates the Supreme Court's decision in Carnival Cruise Lines v. Shute, 499 U.S. 585 (1991). Carnival Cruise Lines, however, did not involve Title VII or any other salient public policy interest, but was concerned with the enforceability of a forum selection clause where plaintiffs were physically and financially incapable of pursuing their suit in the selected forum. 499 U.S. at 593.³ Defendant's arguments that forum selection clauses of the type at issue should simply be treated as arbitration provisions is a closer question.

"We have held that federal statutory claims may be the subject of arbitration agreements that are enforceable pursuant to the [Federal Arbitration Act] because the agreement only determines the choice of forum." E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 296 n.11, 122 S. Ct. 754, 151 L. Ed. 2d 755 (2002). The Court so held on the basis that in agreeing to such arbitration, a party does not forgo the substantive rights afforded by the statute, but "only submits to their resolution in an arbitral, rather than a judicial forum." Id. (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). Nevertheless, this Court does not find analogizing the present forum selection clause to an arbitration agreement appropriate. Unlike general forum selection clauses, contractual arbitration agreements involving commerce are enforceable pursuant to the Federal Arbitration Act. 9 U.S.C. § 2. This act is read to "manifest a liberal federal policy favoring arbitration agreements." E.E.O.C., 534 U.S. at 289 (quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 25, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991) (internal quotation marks omitted)). Congress has statutorily

---

³For the same reason, Defendant's reliance on the court's order in LSPA Enterprise, Inc. v. Jani-King of New York, Inc. is misplaced. (See Defs.' Mem., Ex. A.) In that case, plaintiff alleged that the forum selection clause was unenforceable because the majority of Plaintiff's claims were based on fraud. (Id.) The case did not involve a Title VII claim or the argument that civil rights laws render a forum selection clause unenforceable.

compelled enforcement of arbitration agreements, expressing its approval for shifting a dispute from a judicial forum to an arbitral one. See Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 89, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000) (determining enforceability of arbitration agreement in light of FAA's purpose "to reverse the longstanding judicial hostility to arbitration agreements" (quoting Gilmer, 500 U.S. at 24)). Congress has not so acted as to forum selection clauses that only change the geographic location in which the action must be litigated.  Here, the parties did not include an arbitration clause in their agreement.  The lack of an arbitration agreement means the policies that motivate the FAA's presumption in favor of enforceability are not present. Having never agreed to arbitrate its dispute, and having expressed his desire for a jury trial, Plaintiff has made out a *prima facie* case that venue is proper.

Consequently, that part of Defendants' Motion to Dismiss or Alternatively to Transfer Venue requesting dismissal will be denied.[4]

## C.   Defendants' Motion to Transfer

In the alternative, Defendant moves this Court to transfer the action from the

---

[4]Because this Court finds that enforcing the forum selection clause would frustrate a strong public policy of the forum state, it need not consider whether enforcement would also effectively deny Plaintiff his day in court.  Nevertheless, the Court notes that this argument would almost certainly fail. In Brooks v. Batesville Casket Co., Inc., No. 3:11-CV-731(JCH), 2011 WL 3837089 (D. Conn. Aug. 30, 2011), plaintiff argued, much as Sepanski does here, that enforcing the forum selection clause would be unreasonable because it would require litigating in a court approximately 800 miles from where the events of the case arose, and because non-party witnesses would be unwilling to travel to the court to testify. Id. at *5-6. That plaintiff also argued that she would be unable to afford local counsel, or afford the transportation costs for litigating in a distant forum.  Id. at *5. Analogizing to the Second Circuit decision in Phillips, the court held that although litigating in the forum would be difficult, it would not be impossible, and rejected Plaintiff's argument.  Id. at *6.  In the present case, Plaintiff has similarly argued that the selected forum, Dallas County, is an inconvenient forum.  Plaintiff stresses the distances involved, 1,300 miles, the difficulties of finding local counsel, and the greater cost involved in litigating in Texas. (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss or Alternatively to Transfer Venue, Docket No. 12, 6.)  Plaintiff has failed to distinguish his case from decisions like Brooks and Phillips in which substantially similar hardships were held insufficient to render a forum selection clause unenforceable.  Consequently, were it not for the public policy reasons underlying Plaintiff's Title VII claim, this Court would likely grant Defendant's Motion to Dismiss or Alternatively to Transfer the case. See Huntingdon Eng'g & Envtl. Inc. v. Platinum Software Corp., 882 F. Supp. 54, 56-57 (W.D.N.Y. 1995).

Western District of New York to the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a). Plaintiff responds that various factors favor retaining the action in this district.

Transfer of an action to another federal district is available under two statutory provisions. 28 U.S.C. § 1404(a) provides that a district court may transfer a civil action to any other district where the case might have been brought if the transfer serves "the convenience of the parties and witnesses, [and is] in the interest of justice." 28 U.S.C. § 1404(a). The primary goal of § 1404(a) is to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 27, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). Alternatively, transfer is also available pursuant to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

In determining whether the interests of justice and convenience support transfer, district courts evaluate nine factors: (1) the convenience of witnesses; (2) the convenience of parties; (3) the location of the relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative financial means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight afforded plaintiff's choice of forum; and (9) judicial economy and the interests of justice. Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F.Supp.2d 282, 285-86 (S.D.N.Y. 2004). Courts have broad discretion in evaluating these factors under § 1404(a) and 1406(a), and notions

of convenience and fairness are considered on a case-by-case basis.  See D.H. Blair & Co., Inc. v Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006); Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993).

### 1. The Convenience of the Witnesses and Parties

"The convenience of both party and non-party witnesses is probably the single most important factor in the analysis of whether transfer should be granted."  Wagner v. N.Y. Marriot Marquis, 502 F. Supp. 2d 312, 315 (N.D.N.Y. 2007) (internal quotation marks and citation omitted).  Although "the convenience of non-party witnesses is accorded more weight than that of party witnesses," party witnesses are still relevant.  ESPN, Inc. v. Quicksilver, Inc., 581 F. Supp. 2d 542, 547 (S.D.N.Y. 2008).

To demonstrate the alleged inconvenience, the "party moving to transfer on the ground that witnesses will be inconvenienced is obliged to 'name the witnesses who will be appearing and describe their testimony . . . .'"  Beatie and Osborn LLP v. Patriot Scientific Corp., 431 F. Supp. 2d 367, 396 (S.D.N.Y. 2006) (quoting Schieffelin & Co. of Boca, Inc., 725 F. Supp.1314, 1321 (S.D.N.Y. 1989)).  But in cases where discovery has not been conducted, a party "will not be held to the requirement of stating with precision each witness and document."  Heyco, Inc. v. Heyman, 636 F. Supp. 1545, 1549-50 (S.D.N.Y. 1986).  In these circumstances, courts are permitted to determine the logical location of the witnesses based upon an examination of the record.  Id.

Here, Plaintiff identifies six witnesses, all residing in or around Buffalo, New York. These include the Plaintiff himself, two of Defendants' franchise owners, and several of Defendants' former employees.  Defendants  identify two additional witnesses, both

employed by Defendants, who possess knowledge of the reasons for Plaintiff's termination and are located in Dallas County, Texas.  Each of the identified witnesses is likely to possess knowledge relevant to the resolution of this dispute.  Although the record at this stage of the litigation is particularly sparse, none of the witnesses, with the exception of Plaintiff, appear to have substantially more crucial testimony than any of the other witnesses.  Consequently, this factor weighs slightly in favor of Plaintiff.

### 2. The Locus of the Operative Facts and the Location of the Relevant Documents

All the alleged discriminatory acts occurred in Buffalo, New York.  However, Plaintiff also alleges that employees working in Texas were involved in his discriminatory and retaliatory termination.  The fact that the majority of relevant documents are also physically located at Defendants' corporate headquarters in Dallas County, Texas does not alter the balance.  See Am. Steamship Owners Mut. Prot. & Indem. Ass'n. Inc. v. LaFarge N. Am., Inc., 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007) (finding that although the location of documents is a proper consideration, it has become "largely a neutral factor in today's world of faxing, scanning, and emailing documents").  As a result, this factor is neutral.

### 3. The Availability of Process to Compel the Attendance of Unwilling Witnesses

This factor calls for a determination of which court possesses subpoena power to compel the attendance of unwilling witnesses.  See Beatie & Osborn LLP v. Patriot Scientific Corp., 431 F.Supp.2d 367, 397-98 (S.D.N.Y. 2006).  Defendants' witnesses would be susceptible to the subpoena power of the federal district court in Dallas, but outside this Court's subpoena power.  Conversely, it appears that Plaintiff's witnesses

would be within this Court's subpoena power, but not that of the Northern District of Texas. This factor is therefore neutral.

### 4. The Relative Financial Means of the Parties

"The relative means of the opposing parties may support or discourage transfer of venue if there is a significant financial disparity between the parties." Herbert Ltd. P'ship, 325 F. Supp. 2d at 290. Defendants do not dispute that they have greater financial means than Plaintiff to litigate this case in a foreign jurisdiction. Consequently, this factor weighs against transfer.

### 5. The Comparative Familiarity of Each District with the Governing Law

This factor supports transfer when a federal court based in one state is asked to apply the law of another state. See Heyco, 636 F.Supp. at 1550-51 (holding that this factor supports transfer because "[a] New Jersey federal court is better suited to apply New Jersey state law than is a New York federal court."). This Court is confident that both it and the Northern District of Texas have equal familiarity with adjudicating claims under Title VII. Therefore, this factor is neutral.[5]

### 6. The Weight Afforded to Plaintiff's Choice of Forum

Ordinarily, the plaintiff's choice of forum is accorded relatively greater importance than the other factors. This is especially the case where Congress has provided plaintiffs

---

[5] Plaintiff also brings a claim under the NYHRLS. Defendant has argued that this claim will ultimately be dismissed because the choice-of-law clause stipulates that Texas state law will govern the claim. Plaintiff responds that, like the forum selection clause, the choice-of-law clause may be unenforceable on public policy grounds. Plaintiff bears the burden of showing that venue is proper as to each of his claims. Giro, Inc. v. Malaysian Airline Sys. Berhad, No. 10 Civ. 5550(JGK), 2011 WL 2183171, at *3 (S.D.N.Y. June 3, 2011) (citing PI, Inc. v. Quality Prod., Inc., 907 F. Supp. 752, 757 (S.D.N.Y. 1995)). Because neither party has fully addressed this issue, and because of its decision on venue as to Plaintiff's Title VII claim, this Court will not, at this time, address the issue of which state's law is applicable to Plaintiff's state law claims.

a choice of forums. Jones v. Walgreen Co., 463 F. Supp. 2d 267, 271 (D. Conn. 2006) ("The interest of justice favors retention of jurisdiction in the forum chosen by an aggrieved party where, as here, Congress has given [her] a choice" (quoting Newsweek, Inc. v. U.S. Postal Serv., 652 F.2d 239, 243 (2d Cir. 1981)). Although the forum selection clause would ordinarily weigh in favor of transfer, the fact that this Court has already found it unenforceable, means that Plaintiff's choice will be given consideration. Therefore, this factor weighs against transfer.

### 7.  Judicial Economy and the Interests of Justice

The present case is at a very early stage in the litigation. This Court has not developed any significant familiarity with the case, nor have the parties engaged in discovery. This Court must also consider, however, the interests of justice. As previously discussed, because Plaintiff brings claims under Title VII, there is a substantial public interest in seeing the matter litigated in a local forum. See Red Bull Assocs, 686 F. Supp. at 451-52. Although the record is insufficiently developed to ascertain the strength of Plaintiff's evidence of discrimination, see Red Bull, 862 F.2d at 967, in light of the public policy interests underlying Title VII, the Court finds that this factor weighs against transfer.

For the reasons stated above, this Court finds that a balance of these factors weighs against transferring venue to the Northern District of Texas. That part of Defendants' Motion to Dismiss or Alternatively to Transfer Venue will be denied.

### IV.  CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss or Alternatively to

Transfer Venue is denied.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion to Dismiss or Alternatively to Transfer Venue (Docket No. 8) is DENIED.

SO ORDERED.

Dated: September 30, 2011
       Buffalo, New York

                                        /s/William M. Skretny
                                     WILLIAM M. SKRETNY
                                           Chief Judge
                                  United States District Court